UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TROY L. FENTON,                    )
                                   )
              Petitioner,          )
                                   )
       v.                          )        No. 4:07 CV 1595 DJS
                                   )                           DDN
DAVE DORMIRE,                      )
                                   )
              Respondent.          )

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

      This action is before the court upon the original petition and the
first amended petition[1] of Missouri state prisoner Troy L. Fenton for a
writ of habeas corpus under 28 U.S.C. § 2254.  The action was referred
to the undersigned United States Magistrate Judge for review and a
recommended disposition pursuant to 28 U.S.C. § 636(b).  For the reasons
set forth below, the undersigned recommends that the petitions for a
writ of habeas corpus be denied.


**I.  BACKGROUND**

      On January 9, 2003, petitioner Fenton was convicted by a jury in
the Circuit Court of St. Louis County, Missouri, of robbery in the first
degree (Count I); two counts of armed criminal action (Counts II and
IV);  and assault in the first degree (Count III).  (Doc. 12, Ex. A at
74.)  On March 17, 2003, petitioner was sentenced to life imprisonment
on Counts I and III, and 50 years on Counts II and IV.  (Id. at 74-76.)
The sentences on Counts I-IV were ordered to run consecutively with each
other.  (Id.)  The Missouri Court of Appeals affirmed the judgment on
April 13, 2004.  State v. Fenton, 131 S.W.3d 857 (Mo. Ct. App. 2004)
(summary order) (per curiam); Doc. 12, Ex. E (supplemental opinion).

      Petitioner filed a motion for post-conviction relief on June 9,
2003.  (Doc. 12, Ex. F at  1.)  On May 3, 2006, the circuit court denied

_____

      [1]The first amended petitioner filed by Troy L. Fenton alleges no
new ground for relief.  Instead, it drops original petition's Grounds
5 and 6.  The undersigned nevertheless has reviewed original Grounds 5
and 6.

the post-conviction relief motion following a hearing held on December 1, 2005.[2]  (Id. at 4.)  The Missouri Court of Appeals affirmed the denial of relief.  Fenton v. State, 230 S.W.3d 8 (Mo. Ct. App. 2007) (summary order) (per curiam).

In its supplemental opinion on direct appeal from the conviction, the Missouri Court of Appeals described thus the facts indicated by the evidence that supported the verdict:

> On October 10, 2001, in Sikeston, Missouri, [petitioner] and his brother, Ernest Fenton, robbed Super D's Pharmacy at gunpoint.  [Petitioner] stole various controlled substances while Ernest Fenton waited outside in the car.  After the robbery, the pharmacist called the police and reported the license plate number of the car.  After the robbery, the pharmacist called the police and reported the license plate number of the car.  Lieutenant Mark Crocker ("Crocker") was the first police officer to spot [petitioner] and his brother as they passed him on the highway.  Crocker identified the license plate number and proceeded to follow the suspect vehicle, turning on his emergency lights.  As Crocker followed [petitioner's] vehicle, Officer Christopher Newell ("Newell") blocked the roadway with his marked police car, forcing the driver to make a left turn onto Little Street.

> Crocker found [petitioner's] vehicle parked behind the breezeway at 106 Little Street, a residence in Sikeston, Missouri.  When Newell arrived on the scene, he observed a white male walk in front of [petitioner's] vehicle.  Newell ordered the suspect to lie on the ground with his hands up.  Instead, the man entered the house and seconds later, gunshots were fired from inside the house.

> In response, police officers shouted for the man to come out of the house.  As Crocker approached the house, he observed an individual start to exit, immediately retreat and slam the door.  Crocker, who had been on the south side of the house, then moved to the north side, crossing in front of the house.  As he crossed, the occupants of the house fired eight or nine shots in his direction, hitting Crocker in the leg.  the injury prevented Crocker from walking and he received assistance from other officers on the scene.

> Following Crocker's shooting, an individual stuck his head out the window, withdrew and then a handgun appeared in the window.  An officer fired a shotgun round through the

_____

[2]The hearing record was supplemented by the written affidavit of petitioner Fenton.  (Doc. 12, Ex. F at 4; Ex. H.)

window and another officer advised the occupants over a public address system that the house was surrounded. Two men, later identified as [petitioner] and his brother, vacated the house. Both were taken into custody and transported to the Scott County Sheriff's Department.

While in Scott County custody, [petitioner] admitted that he robbed the pharmacy at gunpoint, he knew the police were chasing him, and he shot the officer. He admitted that while fleeing, he heard his police scanner report that the police knew the location of his car. [Petitioner] further stated that he and his brother drove into a field and broke into the residence on Little Street. [Petitioner] acknowledged that while inside the Little Street house, he fired his gun from the window to scare the police as they approached the house. [Petitioner] repeatedly stated he felt regret for shooting the police officer.

(Doc. 12, Ex. E at 2-3.)

## II. PETITIONER'S GROUNDS FOR HABEAS CORPUS RELIEF

Petitioner claims six grounds for relief in this habeas action:

(1) Petitioner was denied due process and equal protection, because there was insufficient evidence to convict petitioner of assault on a law enforcement officer in the first degree.

(2) Petitioner received ineffective assistance of trial counsel when counsel failed to file a motion for a speedy trial request.

(3) Petitioner received ineffective assistance of trial counsel when counsel failed to ask the trial court to instruct the jury to disregard petitioner's disheveled and unkempt appearance.

(4) Petitioner received ineffective assistance of trial counsel when counsel failed to have petitioner mentally evaluated to ascertain whether he was competent to stand trial.

(5) Petitioner was denied due process when the trial court sentenced him, in part, based on the erroneous belief that he was previously convicted of aggravated assault in Fayetteville, Arkansas.

(6) Petitioner contends that the trial court erred in sentencing him as a prior and persistent drug offender because he was previously acquitted of possessing a controlled substance.

(Doc. 1.) Respondent argues that all grounds are without merit, Grounds 5 and 6 are procedurally barred, and Ground 6 is not cognizable in this action. (Doc. 9.)

## III. EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for the claims they make in federal habeas corpus petitions. See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

However, exhaustion in the sense that petitioner has no remaining procedure for bringing a claim to the state court does not satisfy the statutory requirement. Rather, petitioner must have fairly presented each ground to the trial and appellate courts. Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam). If he has not done so and has no remaining procedure for doing so because he has defaulted on the legitimate requirements of the otherwise available procedures, his ground for federal habeas relief is barred from consideration by the federal courts. King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (holding petitioner's failure to present a claim on appeal from a circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court); Boyd v. Groose, 4 F.3d 669, 671 (8th Cir. 1993). However, that does not end the analysis.

Petitioner may avoid the procedural bar, if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or if he can demonstrate that failure to review the claim would result in a fundamental miscarriage of justice. Coleman v. Thomspon, 501 U.S. 722, 750 (1991). To establish sufficient cause for the procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with a state procedural requirement. Id. at 750-52. To establish actual prejudice, petitioner must show that the errors of which he complains "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). To demonstrate failure to review his grounds for relief would result in a fundamental miscarriage of justice, petitioner may show that he was actually innocent. Murray v. Carrier, 477 U.S. 478, 495-496 (1986). A habeas petitioner asserting actual

innocence to support his allegations of constitutional error must do so with new, reliable evidence. <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). Without new evidence of innocence, even a meritorious constitutional claim is not sufficient to allow a habeas court to reach the merits of a procedurally defaulted claim. <u>Id.</u> at 316.

Missouri Supreme Court Rule 29.14(b) requires the filing of motions for post-conviction relief within 90 days after the date of mandate of the appellate court affirming the judgment, or not later than 180 days after delivery to the Department of Corrections if there is no direct appeal. Mo. S. Ct. R. 29.14(b).

## IV.  REVIEW OF MERITS

Habeas relief may not be granted by a federal court on a claim that has been decided on the merits in state court unless that adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case." <u>Tokar v. Bowersox</u>, 198 F.3d 1039, 1045 (8th Cir. 1999). The issue a federal habeas court faces when deciding whether a state court unreasonably applied federal law is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams v. Taylor</u>, 529 U.S. 362, 409 (2000) (plurality opinion). A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); <u>Whitehead v. Dormire</u>, 340 F.3d 532, 536 (8th Cir. 2003). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. <u>Id.</u>

## V.  DISCUSSION

**Ground 1**

In Ground 1, petitioner contends he was denied due process and equal protection, because there was insufficient evidence to convict him of assault on a law enforcement officer in the first degree. Petitioner claims he lacked the requisite intent because he "aimlessly" shot out of a house window.

The Missouri Court of Appeals rejected this claim, concluding that sufficient evidence existed from which a reasonable juror could find the petitioner guilty beyond a reasonable doubt. (Doc. 12, Ex. E at 1-2.)

At trial, testimony indicated that petitioner knew the police were chasing him after the robbery. (Id., Ex. B2 at 394.) Petitioner and his accomplice jumped out of the car, kicked in the door of a house, and went inside. (Id.) Trial testimony further indicated that petitioner said he felt the police were getting ready to come into the residence, and he shot out of the window to keep them back. (Id. at 385, 395.) Petitioner also admitted to shooting "aimlessly." (Id. at 317.) After petitioner was in custody, Deputy Sullivan asked him, "did you do that?" and petitioner answered "yes, I did. If I regret anything about this, I regret the officer." (Id., Ex. B2 at 291.)

Petitioner was charged with violating Mo. Rev. Stat. § 565.081.1, which requires the state to prove that petitioner either attempted to kill or knowingly caused or attempted to cause serious physical injury to a law enforcement officer. Mo. Rev. Stat. § 565.081.1. In determining whether petitioner possessed the requisite intent, the Missouri Court of Appeals relied on a previous holding construing identical intent language found in Mo. Rev. Stat. § 565.050, where the court held that "[i]ntent is generally not susceptible of direct evidentiary proof and may be based upon circumstantial evidence or inferred from surrounding facts . . . [and may be] determined from evidence of the [petitioner's] conduct before the act, from the act itself, and from the defendant's subsequent conduct." (Doc. 12, Ex. E. at 5-6) (quoting State v. Johnson, 948 S.W.2d 161, 166 (Mo. Ct. App. 1997)). If someone consciously engages in conduct that causes serious physical injury, his behavior satisfies the requisite intent requirements of first degree assault on a law enforcement officer. (Id.

-6-

at 6) (citing <u>State v. Whalen</u>, 49 S.W.3d 181, 187 (Mo. 2001)).
"Furthermore, the natural consequence of firing a deadly weapon, such
as a pistol, in the direction of [an officer], in the absence of
countervailing circumstances, 'is, at the very least, great bodily
harm.'" <u>State v. Mann</u>, 129 S.W.3d 462, 467 (Mo. Ct. App. 2004).

 For due process purposes, on federal habeas review, the relevant
inquiry in reviewing the sufficiency of the evidence is whether, after
viewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319
(1979). A state appellate court's conclusion that the evidence was
sufficient to support a criminal conviction is entitled to great
deference by a federal habeas court. <u>Id.</u> at 323.

 The evidence at trial indicates that a reasonable jury could have
found that petitioner consciously engaged in the conduct of firing a
weapon, the natural consequence of which causes serious physical injury.
Petitioner believed the police were in the vicinity and intentionally
fired his weapon (Doc. 12, Ex. B2 at 385, 395), thus satisfying the
requisite intent under Missouri law. This decision was well-based on
law and fact, and was not "contrary to," nor did it involve an
"unreasonable application of," clearly established federal law. 28
U.S.C. § 2254(d)(1). Furthermore, petitioner has not shown that the
state court's determination "resulted in a decision that was based on
an unreasonable determination of the facts in light of the evidence
presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The
state court's finding of sufficiency of the evidence is entitled to
deference by this court. <u>Jackson</u>, 443 U.S. at 323.

 The decisions of the Missouri state courts were correct, and Ground
1 is without merit.


### <u>Grounds 2-4</u>

**Constitutionally ineffective assistance of counsel**

 Grounds 2 through 4 allege ineffective assistance of counsel. In
order to prevail on a habeas claim of ineffective assistance of counsel,
the petitioner must demonstrate a lack of reasonable performance of

counsel and prejudice resulting from the unreasonable representation. Strickland v. Washington, 466 U.S. 668, 687 (1984). Under the performance component, petitioner must show that his counsel's performance was unreasonable and not valid trial strategy. Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Thai v. Mapes, 412 F.3d 970, 978-79 (8th Cir. 2005). "[S]trategic choices of trial counsel are entitled to great deference." Boyd v. Minnesota, 274 F.3d 497, 502 (8th Cir. 2001). Under the prejudice component, petitioner must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Morales v. Ault, 476 F.3d 545, 550 (8th Cir. 2007), cert. denied, 128 S.Ct. 177 (2007).

## Ground 2

Petitioner contends he received constitutionally ineffective assistance of trial counsel, when counsel failed to file a motion for a speedy trial. (Doc. 1 at 16.) Petitioner states that he and counsel discussed filing a motion for a speedy trial. (Doc. 12, Ex. H at 10.) He also states that he expressed concern about the delay each time he communicated with counsel. (Id.) Petitioner also asked counsel to withdraw for failure to request a speedy trial. (Id., Ex. I at 8.)

Counsel testified that one of the reasons he did not file a motion for a speedy trial was because he had several motions pending, including a motion for a change of judge, a change of venue, and a motion to suppress. (Id., Ex. I at 7-8.) Counsel also did not believe he could be ready for trial within 180 days. (Id. at 31.)

The Missouri Court of Appeals rejected petitioner's claim on the merits, albeit in a summary order. See Fenton, 230 S.W.3d at 8. When such an order does not express the reasons for the decision, it is presumed the Missouri Court of Appeals rejected the claim for the reasons given by the circuit court when it rejected the claim. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The circuit court held that petitioner was aware of his trial date, voiced no objections during his court appearance, and that all time periods but a few days were agreed to by petitioner's counsel and not objected to by petitioner in any manner. (Doc. 12, Ex. F at 53.) The

court also found petitioner's statements to be inconsistent, and an attempt to "burn both ends of the candle." (Id. at 54.) On the one hand, petitioner argued that he wanted a speedy trial, and that the state filing of a writ of habeas corpus changed his conditions in prison, requiring the protections of a speedy trial, but petitioner offered no showing that he was prejudiced by the delay. (Id. at 53-54) On the other hand, petitioner showed up to trial and asked for a continuance to have a mental examination, because he wanted to pursue a mental disease or defect defense. (Id., Ex. F at 55; Ex. H at 27-28.) The court further stated that, given counsel's statements that petitioner told him he wanted to cost the state as much money as possible by requesting a mental evaluation, petitioner was not prejudiced by not being able to present an apparently "fabricated" defense. (Id., Ex. F at 55; Ex. I at 15-16.)

Decisions pertaining to the filing of a motion for speedy trial are considered matters of trial strategy. See United States v. Washington, 198 F.3d 721, 723-724 (8th Cir. 1999) (recognizing that a defendant must always make the ultimate decision whether to plead guilty, waive a jury trial, testify on his or her own behalf, and take an appeal, but that all trial decisions are strategic decisions made by counsel). "Moreover, the trial counsel's choice of trial strategy, even when later proved incorrect, does not without more amount to ineffective assistance of counsel." United States v. Weir, 657 F.2d 1005, 1008 (8th Cir. 1981) (per curiam). Furthermore, the decision of trial counsel is not considered ineffective, unless petitioner shows he was actually prejudiced by the decision not to file the motion for a speedy trial. See Strickland, 466 U.S. at 687.

As set forth above, to demonstrate ineffective assistance for failure to file a motion for a speedy trial, petitioner must first show that his counsel's performance was unreasonable and not valid trial strategy, Kimmelman, 477 U.S. at 381, and if petitioner satisfies this first component, he must then demonstrate reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Morales, 476 F.3d at 550. Therefore, petitioner must show that his case would have been dismissed as a

violation of a right to a speedy trial had the speedy trial motion been filed.

Petitioner presents no evidence that he objected to the filing of these motions. Petitioner also offers no evidence indicating counsel's decisions to file these motions, and not file a motion for a speedy trial, was not based on reasonable trial strategy. After all, "strategic choices of trial counsel are entitled to great deference." Boyd, 274 F.3d at 502. Furthermore, petitioner fails to demonstrate that he was prejudiced by counsel's decision, in that he was actually deprived of his right to a speedy trial.

To determine whether petitioner has been deprived of his right to a speedy trial, the court assesses four factors: 1) the length of delay; 2) the reason for delay; 3) the defendant's assertion of the right to a speedy trial; and 4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972).

**Length of Delay**

For purposes of constitutional analysis, speedy trial rights attach when a "criminal suspect becomes an accused by his arrest or indictment." United States v. Rogers, 639 F.2d 438, 441 (8th Cir. 1981). Petitioner was arrested on the day of the crime, October 10, 2001. (Doc. 12, Ex. A at 1.) Petitioner's case went to trial on January 7, 2003. (Id. at 68.) This was a delay of 454 days, or approximately 15 months. A delay approaching one year may be presumptively prejudicial, and necessitates inquiry into the other factors to determine whether a defendant's speedy trial rights have been violated. See United States v. Titlbach, 339 F.3d 692, 699 (8th Cir. 2003).

**Reason for the delay**

When a petitioner has or shares responsibility in the delay, he may not be entitled to the speedy trial safeguard. Dickey v. Florida, 398 U.S. 30, 47 (1970). Examples that indicate responsibility for the delay include making dilatory pleadings and motions, or failing to object to continuances. Id.

On April 11, 2002, petitioner filed a motion for a change of judge and venue, resulting in 47 days of delay until the motions were resolved on May 21, 2002. (Doc. 12, Ex. A at 6-7.) On June 12, 2002, petitioner filed a motion to suppress. (Id. at 19.) The circuit court heard and overruled the motion to suppress on November 18, 2002, thus resulting in 154 days of delay. (Id.) Moreover, the initial complaint was filed on October 11, 2001, and petitioner's preliminary hearing, after several continuances, was held on April 10, 2002, resulting in approximately 180 days of delay. (Doc. 1, Ex. A at 2-5.) There is no indication that petitioner had any objection to these continuances, meaning petitioner acceded to the delay. Therefore, petitioner affirmatively created 194 days of delay, and acceded to approximately 180 days of delay, totaling approximately 374 days of the 454 days he waited before trial, thus leaving approximately 80 days of delay to which he did not create or accede.

Petitioner shares significant responsibility for the delay. Consequently, this factor is weighed against him in the balancing test.

**Petitioner's assertion of his right to a speedy trial**

The third factor weighed is petitioner's assertion of his right to a speedy trial. Petitioner must "assert the right if he wishes its protection and if he does not make a demand for trial or resist a continuance of the case, or if he goes to trial without objection that the time limit has passed, or fails to make some kind of effort to secure a speedy trial, he will not ordinarily be in position to demand dismissal because of delay in prosecution. . . ." Shepherd v. United States, 163 F.2d 974, 978 (8th Cir. 1947). The assertion of the right to a speedy trial is closely related to the other factors in the balancing test, and the "strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences." Barker, 407 U.S. at 531. Strong evidentiary weight is given to a defendant who asserts his speedy trial right when determining whether the defendant has been deprived of that right. Id.

There are several factors that weigh against petitioner's right to demand dismissal. Petitioner did not affirmatively request or demand a trial. The only evidence that suggests petitioner wanted to file a speedy trial motion was when he asked counsel to withdraw for failure to request a speedy trial. (Doc. 12, Ex. I at 8.) Petitioner did not file this motion for change of appointed counsel until December 19, 2002, approximately 15 months after his arrest on October 11, 2001. (Id. at 1, 19.) Failure to assert the right to a speedy trial in a timely manner may weigh against petitioner. See Morris v. Wyrick, 516 F.2d 1387, 1390 (8th Cir. 1975) (weighing a delay of more than five months before raising the speedy trial issue against the defendant). Petitioner also failed to object to, nor does he present any evidence that he resisted, any continuances that took place between November of 2001 and March of 2002. (Doc. 12, Ex. A at 3, 4.) Petitioner even wanted to file for change of venue. (Id. Ex. H at 26.) Furthermore, petitioner acknowledged in his deposition that he wanted a continuance approximately sixty days before trial. (Id. at 27.) Failure to object to these continuances weighs against the petitioner's assertion of a right to a speedy trial. Shepherd, 163 F.2d at 978.

Petitioner did not effectively assert his right to a speedy trial. Consequently, this factor is weighed against him in the balancing test.

**Prejudice to petitioner**

The fourth factor to be considered is whether petitioner was prejudiced by any delay in the trial. Barker, 407 U.S. at 530. Prejudice is "assessed in the light of the interests of defendants which the speedy trial right was designed to protect." Id. at 532. There are three assessed interests: 1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the possibility that the defense will be impaired. Id.

With regard to the first interest, petitioner offers no evidence of oppressive pretrial imprisonment in his petition for habeas relief. Petitioner suggests in his post-conviction relief appeal that he was treated poorly, suffered both physical and verbal mistreatment, lacked proper sanitary conditions, and attempted suicide during pretrial

imprisonment. (Doc. 12, Ex. K at 37.) While counsel acknowledged that he saw verbal mistreatment in the Scott County jail (Id. Ex. I at 11), petitioner provides no other evidence to support a claim of oppressive pretrial incarceration. Even if petitioner offered more evidence of oppressive incarceration, this is only one factor weighed in the balancing test.

With regard to the second interest, petitioner offers no evidence of anxiety and concern in his petition for habeas relief. Petitioner suggests in his motion for post-conviction relief that he suffered anxiety and concerns over mistreatment, but offers no evidence to support his claim. (Id., Ex. K at 38.) While petitioner asserts he suffered anxiety and concern, "[a]nxiety and concern of the accused are undoubtedly present to some degree in every case. However, that alone does not establish prejudice where . . . the defendant neither asserts nor shows that the delay weighed particularly heavily on him in specific instances." Morris, 516 F.2d at 1391.

With regard to the third and most important interest, petitioner offers no evidence that his defense was impaired due to the delay. Petitioner is not even sure how his counsel's failure to file the motion impacted his defense. (Doc. 12, Ex. H at 35.) In fact, petitioner wanted more time in order to develop his defense. (Id. at 27.)

After assessing the three interests under the prejudice component, it is clear that petitioner suffered no prejudice as a result of pretrial delay. Petitioner offered no evidence to distinguish his experience from the normal conditions that naturally arise as a result of incarceration. Consequently, the fourth factor is also weighed against petitioner in the balancing test.

In conclusion, Ground 2 fails because petitioner failed to demonstrate that counsel's failure to file a motion for a speedy trial was unreasonable, and that his rights to a speedy trial would have been violated had his counsel filed a motion for a speedy trial. Although the length of delay was presumptively prejudicial, the reason for delay was primarily caused by petitioner, petitioner failed to assert his right to a speedy trial, and petitioner suffered no prejudice as a

result of the delay.  The decisions of the Missouri state courts were correct, and Ground 2 is without merit.

## Ground 3

Petitioner contends he received ineffective assistance of trial counsel when counsel failed to ask the trial court to instruct the jury to disregard petitioner's disheveled and unkempt appearance.

On the first day of trial, petitioner's counsel asked the court to put on the record the fact that petitioner's appearance was "somewhat less than presentable to a jury at this point in time because he has been unable to shower and shave." (Id., Ex. B1 at 20.)  Counsel also stated if he had to do it all over again, he would have asked for the limiting instruction.  (Doc. 12, Ex. I at 33.)  Counsel acknowledged that only one juror referenced petitioner's appearance, and that juror was stricken for cause.  (Id.)  Although petitioner had not showered, he was not wearing jail clothes or any visible restraints in front of the jury.  (Id. at 34-35.)

The Missouri Court of Appeals rejected this claim on the merits, albeit without expressing its reasoning.  See Fenton, 230 S.W.3d at 8. When an order is unexplained, there is a presumption that the appellate court rejected the claim for the reasons given in the circuit court's reasoned explanation for rejecting the claim.  See Ylst 501 U.S. at 803.

The circuit court noted that no approved jury instruction exists relating to the defendant's appearance in court, and the decision whether to submit an instruction for the court is considered trial counsel strategy.  (Doc. 12, Ex. F at 55.)  The circuit court failed to find ineffective assistance of counsel without the petitioner making some showing that he was actually prejudiced by the decision not to offer the "unapproved" instruction.  (Id.)

Decisions pertaining to jury instructions are considered matters of trial strategy.  See Washington, 198 F.3d at 723-724 (recognizing that a defendant must always make the ultimate decision whether to plead guilty, waive a jury trial, testify on his or her own behalf, and take an appeal, but that all trial decisions are strategic decisions made by counsel).  "Moreover, the trial counsel's choice of trial strategy, even

when later proved incorrect, does not without more amount to ineffective assistance of counsel." <u>Weir</u>, 657 F.2d at 1008.  The decision of trial counsel is not considered ineffective, unless petitioner shows he was actually prejudiced by the decision not to offer the unapproved jury instruction.  <u>Strickland</u>, 466 U.S. at 687.

Counsel does not suggest that his failure to request the instruction was reasonable trial strategy.  Even with that in mind however, petitioner provides no evidence to suggest he was prejudiced by the decision not to offer the unapproved jury instruction.  In order to show  he was prejudiced, petitioner "must show that the juror was actually biased against him." <u>Goeders v. Hundley</u>, 59 F.3d 73, 75 (8th Cir. 1995).  Petitioner must also show that had his counsel requested the instruction, the jury would have disregarded his appearance, and the outcome of the case would have been different.  <u>See</u> <u>Morales</u>, 476 F.3d at 550.

The only evidence that suggests the potential for bias was a juror who admitted to a negative first impression of petitioner based on his appearance.  (Doc. 12, Ex. B1 at 89.)  The juror could not assure the attorneys that he could set aside this bias, and the court subsequently granted the defense's strike for cause of that juror.  (<u>Id.</u> at 90-91, 97.)  There is no evidence that any other juror considered petitioner's appearance in making the decision, or that his counsel's failure to submit the instruction changed the outcome of the case.

Consequently, the decisions of the Missouri state courts were correct, and Ground 3 is without merit.


### Ground 4

Petitioner contends he received ineffective assistance of trial counsel when counsel failed to have him mentally evaluated to ascertain whether he was competent to stand trial.  Petitioner suggests the evidence will show that he was incompetent to stand trial, and his counsel should have requested a mental evaluation.  In his deposition, petitioner states that he was on medication that caused suicidal or homicidal thoughts, he was under the care of a psychiatrist, receiving treatment for depression and post-traumatic stress syndrome, taking

several psychiatric medications, and attempted suicide several times. (Id., Ex. H at 12, 15, 17.) Petitioner states that he informed counsel of his condition, and requested a mental evaluation. (Id. at 15-17.)

In the post-conviction motion hearing, counsel testified that petitioner informed him about some mental health issues, that he was taking some medication, and attempted suicide, which took the form of a hunger strike. (Id., Ex. I at 15-16, 19.) Counsel also affirmed that petitioner asked him to file a motion for a mental health examination. (Id. at 17.) When asked why he still did not file the motion, counsel stated that he knew the hunger strike did not last long, and after a discussion with his boss about the matter, he did not have a good faith basis to believe petitioner did not understand the proceedings, or that he did not appreciate the wrongfulness of his conduct. (Id. at 20.) In fact, counsel stated that petitioner was one of the smartest clients he ever had. (Id. at 22.) Petitioner also took an active role in discussions pertaining to possible defenses. (Id. at 22.) Furthermore, before trial, petitioner informed him he wanted to cost the state as much money as possible in order to "get back" at the state for arresting him. (Id. at 22-23.) Counsel was also aware that petitioner previously received a mental evaluation, but refused to cooperate and cursed out the doctor. (Id. at 17.) When asked about mental evaluation requests for previous clients, counsel stated that he did several, but never asked for one he did not feel was appropriate, as that would be a meritless motion and an unethical practice. (Id. at 24-25.)

The Missouri Court of Appeals rejected petitioner's claim on the merits, albeit in an unexplained order. This court must look to the circuit court's ruling on the matter. Ylst, 501 U.S. at 803. The circuit court found that counsel was not ineffective for failing to request a mental evaluation. (Doc. 12, Ex. F at 50.) The circuit court found that "at all times during the trial the [petitioner], though he may not have agreed with this counsel's trial strategy, was cognitive and contextually aware of the matters occurring at trial." (Id.)

Decisions whether to investigate petitioner's mental state are considered matters of trial strategy. See Washington, 198 F.3d at 723-724. "Moreover, the trial counsel's choice of trial strategy, even when

later proved incorrect, does not without more amount to ineffective assistance of counsel." <u>Weir,</u> 657 F.2d at 1008. The decision of trial counsel is not considered ineffective, unless petitioner shows he was actually prejudiced by the decision not to investigate petitioner's mental state. <u>Strickland</u>, 466 U.S. at 687. Therefore, petitioner must demonstrate that counsel's failure to request a mental evaluation was not only unreasonable, but also that he was prejudiced in that he was incompetent to stand trial.

Whether counsel's actions are considered reasonable may be "determined or substantially influenced by the defendant's own statements or actions." <u>Id.</u> at 691. "And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." <u>Id.</u> Therefore, based on counsel's belief that petitioner only wanted a mental evaluation in order to cost the state as much money as possible, and may again refuse to cooperate, it was reasonable for counsel not to pursue that route.

The record establishes that petitioner was not prejudiced by counsel's failure to request a mental evaluation, because the record shows that he was not actually incompetent to stand trial. The test to determine whether a defendant is competent to stand trial is whether the defendant has a "sufficient present ability to consult with his [or her] lawyer with a reasonable degree of rational understanding - and whether he has a rational as well as factual understanding of the proceedings against him." <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960) (per curiam).

In his deposition, petitioner states that he was on medication that caused suicidal or homicidal thoughts, he was under the care of a psychiatrist, receiving treatment for depression and post-traumatic stress syndrome, taking several psychiatric medications, and attempted suicide several times. (Doc. 12, Ex. H at 12, 15, 17.)

Petitioner offers no evidence to suggest how these conditions affected his competency to stand trial. The mere "presence of a mental illness does not equate with incompetency to stand trial." <u>United</u>

<u>States v. Cook</u>, 356 F.3d 913, 918 (8th Cir. 2004).  Petitioner does not
assert that he was unable to consult with his lawyer, or that he lacked
a rational and factual understanding of the proceedings against him.
In fact, petitioner offers several statements in his deposition that
suggest he was quite competent to stand trial.  Petitioner acknowledged
writing several letters to counsel about the need to begin the defense
of mental disease or defect based on the amount of work necessary for
that kind of defense.  (Doc. 12, Ex. H at 15.)  He also wanted to seek
a continuance in order to further develop this defense.  (<u>Id.</u> at 15.)
In <u>Cook</u>, the Eighth Circuit found that the petitioner was not
incompetent to stand trial, where he told counsel about representation
strategy, and expressed a desire for an updated psychological
evaluation.  <u>Cook</u>, 356 F.3d at 418-19.  Likewise, petitioner's active
participation in his defense supports the conclusion that he was quite
able to consult with his lawyer and understood the proceedings against
him, and therefore was not incompetent to stand trial.

Petitioner has failed to show how he was prejudiced by counsel's
failure to request a mental evaluation.  Consequently, the decisions of
the Missouri state courts were correct, and Ground 4 is without merit.


**Ground 5**

Petitioner contends he was denied due process when the trial court
sentenced him, in part, based on the erroneous belief that he was
previously convicted of aggravated assault in Fayetteville, Arkansas.

As stated above, before seeking federal habeas relief, state
prisoners are required to exhaust their state law remedies.  <u>See</u> 28
U.S.C. § 2254(b)(1)(A). Petitioner must have fairly presented each
respective ground to the trial and appellate courts.  <u>Anderson</u>, 459 U.S.
at 6.  If he has not done so and has no remaining procedure for doing
so because he has defaulted on the legitimate requirements of the
otherwise available procedures, he has defaulted on his available state
court remedies and his ground for federal habeas relief is barred from
consideration by the federal courts.  <u>King</u>, 266 F.3d at 821; <u>Sweet</u>, 125
F.3d at 1149-1150 (holding petitioner's failure to present a claim on

appeal from a circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court); <u>Boyd</u>, 4 F.3d at 671.

Ground 5 is an assertion of trial court error, and "[m]ere trial errors are to be corrected by direct appeal." <u>State v. Berry</u>, 798 S.W.2d 491, 497 (Mo. Ct. App. 1990). Petitioner did not argue trial court error on direct appeal. (Doc. 12, Ex. C at 11.) While he did allege trial court error in his amended motion for post-conviction relief (<u>Id.</u>, Ex. G at 12), "[a] post-conviction motion is not a substitute for direct appeal." <u>Phillips v. State</u>, 214 S.W.3d 361, 364 (Mo. Ct. App. 2007).

Petitioner failed to fairly present this ground to the trial and appellate courts. Petitioner admittedly failed to demonstrate legally sufficient cause for the default, actual prejudice resulting from it, or that failure to review the claim would result in a fundamental miscarriage of justice. <u>See</u> <u>Coleman</u>, 501 U.S. at 750. Consequently, petitioner's failure to follow applicable state procedural rules in presenting his claim results in a procedural default, thus barring federal habeas review. <u>See</u> <u>Sweet</u>, 125 F.3d at 1151.

Even if petitioner is not procedurally barred, there was no evidence, and the trial record does not show, that there was evidence of any Arkansas conviction before the sentencing court, let alone that the court relied on the alleged conviction in determining petitioner's sentence. Petitioner acknowledged that he viewed the pre-sentence investigation report, and had nothing to point out for the court's benefit. (Doc. 12, Ex. J at 10-11.) The only evidence petitioner presents is his claim that he had an Arkansas conviction for drug and weapon charges, not for an assault. (Doc. 19 at 3.) This is not substantive evidence of his claim, because there is no evidence that the Missouri circuit court improperly considered an incorrectly characterized conviction. In fact, the trial court actually imposed a more lenient sentence than that requested by the state.[3] There is no

---

[3]The state asked for life sentences on the assault and robbery charges, and 100 years on each of the accompanying armed criminal action charges. (Doc. 12, Ex. J at 13-14.) The trial court imposed life sentences on the assault and robbery counts (<u>Id.</u>, Ex. A at 74), but only
(continued...)

evidence indicating that an incorrect record of a prior conviction enhanced petitioner's sentence to the point of a due process violation.

Accordingly, Ground 5 is both procedurally barred and without merit.

## Ground 6

Petitioner contends that the trial court erred in sentencing him as a prior and persistent drug offender because he was previously acquitted of possessing a controlled substance.

Petitioner did not assert this trial court error on direct appeal, in his motion for post-conviction relief (Doc. 12, Ex. F at 7), or in his amended motion for post-conviction relief. (Id., Ex. G at 2-12.) And he failed to demonstrate legally sufficient cause for the default, actual prejudice resulting from it, or that failure to review the claim would result in a fundamental miscarriage of justice. See Coleman, 501 U.S. 722, 750. Consequently, petitioner's failure to follow applicable state procedural rules in presenting his claim results in a procedural default, thus barring federal habeas review. See Sweet, 125 F.3d at 1151.

Even if petitioner had exhausted his state court remedies, his claim is not cognizable. He contends that the trial court incorrectly applied Missouri law during his sentencing based on his status as a prior and persistent drug offender under Mo. Rev. Stat. § 195.275. However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Consequently, this court ought not reexamine whether the trial court correctly applied Missouri law when it sentenced petitioner as a prior and persistent drug offender under Mo. Rev. Stat. § 195.275 (2000).

Accordingly, Ground 6 is procedurally barred and not cognizable.

---

[3](...continued)
50 years on the armed criminal action counts. (Id., Ex. A at 74-76.)

### VI. CONCLUSION

For the reasons stated above,

**IT IS HEREBY RECOMMENDED THAT** the petition of Troy L. Fenton for a writ of habeas corpus should be denied.

The parties are advised that they have ten (10) days to file written objections to this Report and Recommendation. The failure to file timely, written objections may result in a waiver of the right to appeal issues of fact.


    /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**


Signed on April 3, 2009.